# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE M. DOMINO, Ph.D.,<br><br>            Plaintiff,<br><br>    v.<br><br>CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, et al.,<br><br>            Defendants.<br>_____/ | Case No. 1:19-cv-01790-NONE-SKO<br><br>**SECOND SCREENING ORDER**<br><br>**(Doc. 10)**<br><br>**21-DAY DEADLINE** |

Plaintiff June M. Domino, Ph.D., proceeding pro se and *in forma pauperis*, filed a complaint on December 23, 2019, against California Correctional Healthcare Services and "AFSCME Local 2620." (Docs. 1–3.) In her original complaint, Plaintiff purported to allege claims for employment discrimination under unspecified "Federal Statutes" and "Federal Treaties." (*Id*.) She demanded "$44 Million" in damages. (Doc. 1-1.) Plaintiff also filed an application to proceed *in forma pauperis*, which was granted on December 27, 2019.

On March 3, 2020, the Complaint was screened, and the undersigned found that it failed to state a cognizable federal claim. (Doc. 8.) Plaintiff was provided with the applicable legal standards so that she could determine if she would like to pursue her case and was granted twenty-one (21) days leave to file an amended complaint curing the pleading deficiencies identified in the order. (*Id*.)

Plaintiff filed her First Amended Complaint against Defendants California Correctional Healthcare Services, AFSCME Local 2620, and "Does 1–50" on March 24, 2020. (Doc. 10 ("First Am. Compl.").) As with her original Complaint, Plaintiff has not stated any cognizable federal

claims in her First Amended Complaint. Plaintiff has also added an additional claim for negligent supervision, which is not sufficiently pleaded.[1] Because she may be able to correct the deficiencies in her pleading for a few of her claims, Plaintiff is granted **<u>one final opportunity</u>** to amend her allegations. Thus, Plaintiff is once again provided the pleading requirements and legal standards under which her claims in a second amended complaint will be analyzed.

### I.        SCREENING REQUIREMENT AND STANDARD

The Court is required to screen complaints in cases where the plaintiff is proceeding in forma pauperis. 28 U.S.C. § 1915(e)(2). Plaintiff's First Amended Complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 28 U.S.C. § 1915(e)(2)(B). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*).

The Court's screening of the complaint is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Plaintiff must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what Plaintiff's claims are and the grounds upon which they rest. *See, e.g., Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are

---

[1] The caption of the First Amended Complaint also lists claims under the California Fair Employment and Housing Act of 1964 ("FEHA") and the California Labor Code (*see* Doc. 10 at 1), however, no such claims are alleged or pleaded therein. (*See* First Am. Compl. ¶¶

taken as true and construed in the light most favorable to the plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). Moreover, since Plaintiff is appearing *pro se*, the Court must construe the allegations of her complaint liberally and must afford Plaintiff the benefit of any doubt. *See Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

Further, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citations omitted).

## II.   DISCUSSION

**A.   The First Amended Complaint**

According to the First Amended Complaint, Plaintiff is an African American female who was employed by Defendant California Correctional Health Care Services as a Staff Psychologist from October 1, 2015 until she was terminated on November 15, 2018. (First Am. Compl. ¶¶ 5, 12, 20.) Defendant AFSCME Local 2620 is alleged to be a labor union of which Plaintiff was a member during her employment. (*Id.* ¶¶ 15, 31.) Plaintiff alleges that Dr. Stephanie Neumann, Defendant California Correctional Health Care Services' Chief of Mental Health, "sent a signal that racism was acceptable in the workplace," and as a result "other employees displayed contempt for Plaintiff," including deliberately placing a noose over her workstation. (*Id.* ¶ 24.) Dr. Neumann

3

also allegedly made racial and derogatory comments about Plaintiff to other staff members, and "rewarded" staff for their racist and unethical behavior by allowing them to arrive late and leave early. (*Id*. ¶¶ 25, 28.) Plaintiff's direct supervisor, Social Worker Carol Johnson, allegedly engaged in a pattern of "resentment, discrimination, rudeness, and contempt" directed at Plaintiff, the only African American psychologist in their unit. (*Id*. ¶ 23.)

Plaintiff further alleges that Defendants, as "former employers," subjected Plaintiff to a hostile work environment by forcing Plaintiff, as a term and condition of her employment, to participate in and enforce their "[p]olicy of limiting minority patients to unrealistic timeframes for therapeutic services while creating a false billing record for Medi-Cal reimbursement." (First Am. Compl. ¶ 38.) Dr. Neumann also allegedly "created false records" to convince the Court in *Coleman v. Newsom*, Case No. 2:90-cv-0520 KJM DB P, that Defendant California Correctional Health Care Services' Mental Health Department was providing services to minority patients more frequently. (*Id*. ¶ 26.)

According to Plaintiff, when she complained about these policies, Defendants retaliated against her by "purposely sabatog[ing] the scheduling of Plaintiff's patients," excluding her from standard professional trainings, and thwarting her efforts to become licensed. (First Am. Compl. ¶¶ 3, 4.) Plaintiff alleges that Dr. Neumann ultimately provided "false information" that resulted in Plaintiff's termination, which she alleges was based on her race. (*Id*. ¶¶ 5, 29, 50–51.)

With respect to Defendant AFSCME Local 2620, Plaintiff alleges that throughout her employment, the union was "complicit" when employees of Defendant California Correctional Health Care Services would "openly engage in violating the terms and conditions" of its contract with the State of California. (First Am. Compl. ¶ 31.) Plaintiff alleges further that representatives of Defendant AFSCME Local 2620 "participated in and failed to report acts of racism against Plaintiff" and also "willingly and openly participated in multiple acts of racism against [Plaintiff] based of [sic] Sex, Age, Race, and Color." (*Id*. ¶¶ 31–32.)

As a result of the foregoing, Plaintiff alleges causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") for a hostile work environment and retaliation and a cause of action under 42 U.S.C. § 1981 for racial discrimination. Plaintiff also

4

alleges a cause of action under state law for negligent supervision. (First Am. Compl. ¶¶ 36–68.)

Plaintiff seeks declaratory relief, reinstatement, compensatory damages in the amount of $44 million dollars, pain and suffering damages, punitive damages, liquidated damages, and interest. (*Id*. at 11–12.)

**B.     The First Amended Complaint Does Not State a Claim Under Title VII**

**1.     Plaintiff Has Not Sufficiently Pleaded Compliance with Title VII's Exhaustion Requirement**

"Before suing an employer for discrimination, the [EEOC] must try to remedy unlawful workplace practices through informal methods of conciliation." *Mach Mining, LLC v. E.E.O.C*., 575 U.S. 480, 482–83 (2015). Title VII "sets out a detailed, multi-step procedure through which the Commission enforces the statute's prohibition on employment discrimination." *Id*. at 483. Specifically, a Title VII complainant "must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice, or, if . . . the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1104 (9th Cir. 2008). "If the Commission finds no 'reasonable cause' to think that the allegation has merit, it dismisses the charge and notifies the parties." *Mach Mining*, 575 U.S. at 483. Along with the notice, the complainant receives a right-to-sue letter. *Surrell*, 518 F.3d at 1104. "Once a person receives an EEOC right-to-sue letter, she has 90 days to file suit." *Id*. (citing 42 U.S.C. § 2000e-5(f)(1)).

"[T]he jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (citing *Green v. Los Angeles Cty. Superintendent of Sch*., 883 F.2d 1472, 1476 (9th Cir. 1989)). If plaintiff has filed a charge with the EEOC against the defendants, she "must allege the facts relevant to that charge, including: (1) the alleged violation(s); (2) when the charge was filed; and (3) who it was against. The charge itself should be attached as an exhibit if possible." *Whitsitt v. Hedy Holmes Staffing Servs*., No. 2:13-CV-0117-MCE-AC, 2014 WL 5019667, at *5 (E.D. Cal. Oct. 7, 2014. A description of the charge to the EEOC and a copy of the right-to-sue notice are necessary to provide the Court with jurisdiction to hear Plaintiff's claims and to determine the scope

of its review. *Leong v. Potter,* 347 F.3d 1117, 1122 (9th Cir.2003).

Plaintiff alleges that she "timely filed charges with the [EEOC]," and that "[d]uring the pendency of the EEOC's processing and investigation of Plaintiff's charge of discrimination, and prior to the EEOC issuance of a Notice of Right to Sue, Plaintiff diligently attempted to mitigate her differences with the employer by filing an action of review with the California State Personnel Board." (First Am. Compl. ¶¶ 33–34.) She further alleges that "[t]his process ran congruently with the [EEOC] and concluded in November 2019." (*Id.*) Other than to generally describe her EEOC charge as a "charge of discrimination," Plaintiff pleads no facts about the nature of the violations asserted in the charge and against whom such assertions were made. Nor does she attach the charge to her First Amended Complaint.

Plaintiff also fails to allege any facts regarding the status of the EEOC's investigation, including whether it too "concluded in November in 2019" (like the review by the California State Personnel Board), and the results thereof. There are no facts showing the EEOC provided Plaintiff with a right-to-sue letter. In the absence of either the charge itself or allegations of facts sufficient to describe its contents, the Court is unable to determine the scope of the Court's jurisdiction, if any, over the Plaintiff's Title VII claims. Moreover, because the First Amended Complaint does not contain facts alleging that Plaintiff has received a right-to-sue letter (or attached the letter itself), her Title VII claims are subject to dismissal. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (finding district court properly dismissed Title VII claim where plaintiff failed to allege receipt of right-to-sue letter). At this point, however, it is not clear whether Plaintiff can allege facts showing she exhausted her administrative remedies. Accordingly, leave to amend will be granted so that Plaintiff may attempt to cure the defect. *Id.* ("When the district court dismisses a pro se Title VII complaint on the ground that plaintiff has failed to allege the receipt of a right-to-sue letter, however, plaintiff must be granted leave to amend the pleading to cure the defect.").

> **2.      Plaintiff Has Not Sufficiently Pleaded a Title VII Claim Against Defendant AFSCME Local 2620**

Even if Plaintiff had adequately pleaded compliance with Title VII's exhaustion requirements for purposes of screening the First Amended Complaint, she does not state a claim

against Defendant AFSCME Local 2620.

Title VII broadly prohibits an employer from discriminating on the basis of "race, color, religion, sex, or national origin" and from "'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." 42 U.S.C § 2000e-2(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). A "labor organization" is liable under Title VII if it engages in such discrimination in membership practices or causes an employer to engage in such discrimination. *See* 42 U.S.C. §§ 2000e-2(c), 42 U.S.C. § 2000e-3(a).

To establish a prima facie case for a hostile work environment claim under Title VII, Plaintiff must establish that: (1) the defendant subjected the plaintiff to verbal or physical conduct based on her race [or one of the other protected classes]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and created an abusive working environment. *Surrell*, 518 F. 3d at 1108 (citing *Manatt v. Bank of Am.*, NA, 339 F.3d 792, 798 (9th Cir. 2003)). To state a claim for retaliation, Plaintiff must establish that: (1) he engaged in a protected activity under Title VII; (2) the defendant subjected the plaintiff to an adverse employment action; and (3) a causal link exists between the protected activity and the employer's action. *Westendorf v. W. Coast Contractors of Nevada, Inc*., 712 F.3d 417, 422 (9th Cir. 2013); *Villiarimo v. Aloha Is. Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

Plaintiff generally alleges that Defendant AFSCME Local 2620 "participated in and failed to report acts of racism against Plaintiff" and "discriminated against Plaintiff on the bases of Sex, Age, Race and Color." (First Am. Compl. ¶ 31.) Such an allegation does provide sufficient facts to identify an unlawful employment practice of, or retaliation by a labor organization as defined in Title VII. 42 U.S.C. §§ 2000e–2(c), 200e-3(a). In particular, Plaintiff does not allege that Defendant AFSCME Local 2620 discriminated or retaliated against her in a membership practice. She also does not specify how Defendant AFSCME Local 2620 caused her prior employer, Defendant California Correctional Health Care Services, to discriminate or retaliate against her. Furthermore, Plaintiff does not allege any specific conduct that Defendant AFSCME Local 2620 engaged in to

alter her work conditions. Consequently, the Court finds that Plaintiff failed to plead facts sufficient to support hostile work environment and retaliation claims under Title VII against Defendant AFSCME Local 2620. Leave to amend shall be granted so that Plaintiff may attempt to state such claims.

### 3. Plaintiff Has Not Sufficiently Pleaded a Title VII Hostile Work Environment Claim Based on Sex

As set forth above, to state a hostile work environment claim under Title VII, Plaintiff must allege that she was subjected to unwelcome verbal or physical conduct on the basis of either her race, color, religion, sex or national origin that was sufficiently severe or pervasive to alter the condition of her employment and create an abusive work environment. *See Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002). Nowhere in her First Amended Complaint does Plaintiff allege any facts indicating that Defendants discriminated against her on the basis of sex. Allegations that Defendants "created a hostile work environment for Plaintiff because of her Age, Sex, Race and Color" (First Am. Compl. ¶ 41) are insufficient to state a gender-discriminatory hostile work environment claim under Title VII. *See Ashcroft,* 556 U.S. at 678. Leave to amend shall be granted so that Plaintiff may attempt to state such a claim.

### 4. Plaintiff Cannot State a Claim for Age Discrimination Under Title VII

Plaintiff also bases Title VII claim on allegations that Defendants created a hostile work environment because of her age. (*See* First Am. Compl. ¶¶ 4. *See also id*. ¶ 32.) As set forth above, Title VII prohibits employment discrimination on the basis of a person's race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2. Because discrimination on the basis of age does not fall within the coverage of Title VII, Plaintiff cannot state a claim for relief under Title VII for age discrimination.[2] *See, e.g., Roughgarden v. YottaMark, Inc*., No. 5:10–CV–04098 JF (PSG), 2011 WL 856279, at *2 (N.D. Cal. Mar. 9, 2011).

---

[2] The federal statute relevant to claims for employment discrimination on the basis of age is the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. However, any claim of age discrimination under ADEA against Defendant California Correctional Health Care Services would be barred by the Eleventh Amendment. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91–92 (2000) ("The ADEA's purported abrogation of the States' sovereign immunity is . . . invalid"); *Kirby v. Brown*, No. 2:13–cv–00021 LKK JFM (PS), 2013 WL 4780767, at *6 (E.D. Cal. Sept. 5, 2013) (barring claim under the ADEA against California Department of Corrections and Rehabilitation).

**C.     The First Amended Complaint Does Not State a Section 1981 Claim**

Plaintiff's cause of action under 42 U.S.C. § 1981 is based on her contention that "Defendants discriminated against Plaintiff by dismissing her for bad cause based on her race, African American."  (First Am. Compl. ¶ 50.)

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981.  "Section 1981 is not 'a general proscription of racial discrimination . . . it expressly prohibits discrimination only in the making and enforcement of contracts.'" *Peterson v. State of California Dep't of Corrections and Rehabilitation*, 451 F. Supp. 2d 1092, 1101 (E.D. Cal. 2006) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989), *superseded by statute*).  The "specific function" of section 1981 is to protect the equal rights of all people to make and enforce contracts.  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006).

To state a claim under section 1981, "a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against plaintiff on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.)."  *Peterson*, 451 F. Supp. 2d at 1101.

"A contract is necessary to a section 1981 claim."  *Ennix v. Stanten*, 556 F. Supp. 2d 1073, 1082 (N.D. Cal. 2008); *Domino's Pizza, Inc.*, 546 U.S. at 476 ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights.").  A plaintiff cannot state a claim under section 1981 unless she has rights under an existing contract that she is attempting to make and enforce.  *Domino's Pizza, Inc.*, 546 U.S. at 479–80.

As an initial matter, this claim fails as to Defendant California Correctional Health Care

9

Services because section 1981 does not provide a cause of action against state entities.[3] *Pittman v. Oregon*, 509 F.3d 1065, 1074 (9th Cir. 2007) ("[W]e hold that § 1981 does not contain a cause of action against states"). *See, e.g., Guthrey v. California Dep't of Corr. & Rehab.*, No. 1:10-CV-02177-OWW, 2011 WL 1259835, at *3 (E.D. Cal. Mar. 30, 2011) (Section 1981 claim against California Department of Corrections and Rehabilitation not cognizable).

Plaintiff has also not stated a claim under section 1981 against Defendant AFSCME Local 2620. Plaintiff pleads no facts to show the existence of a contractual relationship with the union. *See Domino's Pizza, Inc.*, 546 U.S. at 476. Plaintiff also fails to plead facts showing how the union intentionally discriminated against her on the basis of race in such a way as to impair *their* contractual relationship, instead of her contractual relationship with her former employer, Defendant California Correctional Health Care Services). *See id.* at 480 ("Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's."). Leave to amend shall be granted so that Plaintiff may attempt to state such a claim against Defendant AFSCME Local 2620.

**D.    The First Amended Complaint Does Not State a Claim for Negligent Supervision**

Plaintiff pleads a state law tort claim for negligent supervision against "Defendants" for "fail[ing] to take appropriate corrective action result[ing] in the commission of the wrongful termination and criminal conduct alleged herein." (First Am. Compl. ¶ 66.)

**1.    Plaintiff Cannot State a Claim for Negligent Supervision Against Defendant California Correctional Health Care Services**

Tort liability of public entities in California is governed by the Tort Claims Act, California Government Code §§ 810, *et seq*. The Act provides generally that public entities are not liable for injuries "except as otherwise provided by statute." Cal. Gov't Code § 815(a).

Section 815 abolishes all common-law or judicially-created forms of liability for public entities, except for such liability as may be required by the state or federal constitutions. *Forbes v. County of San Bernardino*, 101 Cal. App. 4th 48, 53 (2002). Accordingly, public entities may be

---

[3] Plaintiff concedes that Defendant California Correctional Health Care Services is an agency of the State of California. (*See* First Am. Compl. ¶13.)

10

1  liable only if a statute is found declaring them to be liable.  *Id*. (citing legislative history).  Plaintiff
2  does not identify a California statute or enactment that authorizes a direct claim against Defendant
3  California Correctional Health Care Services for negligent supervision, and courts have held that
4  there is no statutory basis for such a claim.  *See, e.g., de Villers v. County of San Diego*, 156 Cal.
5  App. 4th 238, 252 ("We find no relevant case law approving a claim for direct liability based on a
6  public entity's allegedly negligent hiring and supervision practices"); *id*. at 253 ("[T]here is no
7  statutory basis for declaring a governmental entity liable for negligence in its hiring and supervision
8  practices.  *See also Bragg v. E. Bay Reg'l Park Dist.*, No. C-02-3585-PJH, 2003 WL 23119278, at
9  *7 (N.D. Cal. Dec. 29, 2003) (finding public entity immune from liability under section 815(a) for
10 claim of negligent supervision).[4]

11      Moreover, Plaintiff's negligent supervision claim as pleaded against Defendant California
12 Correctional Health Care Services is preempted by California Workers Compensation Act.  The
13 Workers Compensation Act provides the exclusive remedy for claims of negligence which occur in
14 the course and scope of employment.  Cal. Lab. Code § 3602(a); *see, e.g., Cole v. Fair Oaks Fire*
15 *Prot. Dist.*, 43 Cal. 3d 148, 161 (1987).  Negligent supervision is a cause of action that is normally
16 asserted by a third party against a tortfeasor's employer.  *See Federico v. Sup. Ct.*, 59 Cal. App. 4th
17 1207, 1214 (1997); *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996).  When it is asserted
18 by one employee against employer, it is barred by the workers compensation exclusivity doctrine.
19 *Vuillemainroy v. American Rock & Asphalt, Inc*., 70 Cal. App. 4th 1280, 1282 (1999).  *See also*
20 *Cole*, 43 Cal. 3d at 160 (Where the misconduct attributed to the employer is actions that are a normal
21 part of the employment relationship, such as demotions, promotions, criticism of work practices,
22 and friction in negotiation of grievances, an employee suffering emotional distress may not avoid
23 the exclusive remedy provisions of the Labor Code by characterizing the employer's actions as
24 unfair or outrageous or as harassment.).  Thus, Plaintiff cannot state a claim for negligent

---

[4] In addition, Plaintiff has failed to allege that she made a written claim to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, pursuant to the requirements of the California Tort Claims Act, Cal. Govt. Code § 945.4.  The Act requires the presentation of a written claim to a state agency as a prerequisite to filing suit.  If she has not presented such a claim, Plaintiff may not pursue any state law tort claims against Defendant California Correctional Health Care Services.  *See, e.g., State v. Sup. Ct. of Kings Cty. (Bodde),* 32 Cal.4th 1234, 1245 (2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

11

supervision against her former employer, Defendant California Correctional Health Care Services, for its alleged "failure to take appropriate corrective action" during her employment.

### 2. Plaintiff Has Not Sufficiently Pleaded a Negligent Supervision Claim Against Defendant AFSCME Local 2620

A claim for negligent supervision under California law requires (1) an employer supervising an employee; (2) who is incompetent or unfit; (3) the employer had reason to believe undue risk of harm would exist because of the employment; and (4) the harm occurs. *Albert v. Mid-Century Ins. Co.,* 236 Cal. App. 4th 1281, 1292 (2015). There is no liability for negligent supervision without the employer's knowledge that the employee "could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of Am., Inc*., 81 Cal. App. 4th 377, 395 (2000).

Plaintiff does not allege any facts to support how her allegation that Defendant AFSCME Local 2620's "failure to appropriate corrective action," of an unspecified nature, amounted to the negligent supervision of the union's employees. As with Plaintiff's Title VII claims, the only allegations in the First Amended complaint that refer to act by individuals who are alleged to be employed by the union are wholly conclusory. (*See* First Am. Compl. ¶ 32 ("Business Agents Cliff Tillman and Beverly Lynn both willingly and openly participated in multiple acts of racism" against Plaintiff); *id*. ¶ 31 ("Union Representatives participated in and failed to report acts of racism against Plaintiff.").) Plaintiff also fails to plead that Defendant AFSCME Local 2620 possessed knowledge that its employees were incompetent or unfit. *Id*. Leave to amend shall be granted so Plaintiff may attempt to state a claim for negligent supervision against Defendant AFSCME Local 2620.

### 3. This Court Does Not Have Original Jurisdiction of State Law Claims

Finally, Plaintiff is advised that, absent a viable Title VII or section 1981 claim, any state law claims arising from the conduct described in the First Amended Complaint, such as her alleged negligent supervision claim, would need to be filed in state court.[5] *See* 28 U.S.C. § 1367. This is because federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In the absence of a claim based on original

---

[5] The same is true for claims brought under FEHA (which, incidentally, has its own administrative exhaustion procedures distinct from those applicable to Title VII claims, *see* Cal. Gov't Code § 12960(d)) and claims brought under the California Labor Code.

jurisdiction, such as Plaintiff's Title VII or Section 1981 claims, the Court may decline to exercise supplemental jurisdiction over all other state law claims. *See* 28 U.S.C. § 1367(a). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

### III.     CONCLUSION AND ORDER

The Court finds Plaintiff has failed to state a claim against any defendant. As noted above, the Court will provide Plaintiff with **one final opportunity** to amend her claims and cure, to the extent possible, the identified deficiencies. *Lopez*, 203 F.3d at 1130. Plaintiff may not change the nature of this suit by adding new, unrelated claims in her amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must identify what causes of action are being pursued, identify the improper actions or basis for liability of each defendant, and the factual allegations must demonstrate plausible claims, *Iqbal*, 556 U.S. at 678–79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012) (*en banc*). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Rule 220, Local Rules of the United States District Court, Eastern District of California.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff is granted leave to file a second amended complaint;

2. **Within twenty-one (21) days from the date of service of this order**, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court in this order, or a notice of voluntary dismissal; and

3. **If Plaintiff fails to file an amended complaint in compliance with this order, the undersigned will recommend to the assigned district judge that this action be dismissed for failure to state a claim, to prosecute, and to obey a court order.**

IT IS SO ORDERED.

Dated: **May 8, 2020**          /s/ *Sheila K. Oberto*
                                UNITED STATES MAGISTRATE JUDGE