UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE M. DOMINO,<br><br>             Plaintiff,<br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTION & REHABILITATION; et al.,<br><br>             Defendants. | Case No. 1:19-cv-01790 JLT SKO<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS<br>(Doc. 56) |

Plaintiff alleges that she was subjected to harassment, discrimination, and retaliation while employed by the California Department of Corrections and Rehabilitation. (Doc. 42.) She brings federal and state claims against CDCR, Kathleen Addison,[1] in her official capacity as CDCR Secretary, and Stephanie Neumann Bese Psy.D., in her official capacity as Chief of Mental Health at the Central California Women's Facility. (*Id*.) Defendants move to dismiss Plaintiff's Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 56.) Plaintiff opposes dismissal. (Doc. 65.) The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART**.

---

[1] Defendant's correct name is Kathleen Allison. *About CDCR*, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, https://www.cdcr.ca.gov/about-cdcr/secretary/ (last visited December 4, 2022). Thus, she will be referred to as such for purposes of this order.

1

## I.      Background and Allegations

Plaintiff was employed as a Staff Psychologist with CDCR from October 2015 until November 2018. (Doc. 42 at ¶¶ 13, 25.) She alleges that on or before November 3, 2015, she found a noose on her work desk, which she reported to Bese. (*Id*. at ¶ 14.) A week later, she was assigned work duties that were not agreed upon within her employment agreement. (*Id*. at ¶ 15.) About a month later, Plaintiff was relocated to the Administrative Segregation unit, which caused her safety concerns due to her "advanced age and limited mobility." (*Id*. at ¶ 16.) Plaintiff alleges her communication of these concerns was ignored and she remained in Ad. Seg. for the remainder of her employment with CDCR. (*Id*.)

In January 2016, Plaintiff declined to complete an annual tuberculosis test as required, explaining to Bese that she completed one as a condition of employment in September 2015. (Doc. 42 at ¶ 17.) According to Plaintiff, Bese "insisted" that she undergo another TB test "to successfully complete her probationary period." (*Id*.) However, Plaintiff asserts she was the only employee "in a similar position as her" who was faced with this requirement. (*Id*.) In April 2016, due to Plaintiff's non-compliance with the TB test requirement and "lack luster performance" of her duties, Bese issued Plaintiff a negative employment evaluation. (*Id*. at ¶ 18.) This was rescinded upon Plaintiff's objection, but Bese subsequently presented Plaintiff with a "Written Letter of Instruction" warning Plaintiff that she was subject to termination for her non-compliance. (*Id*. at ¶¶ 18-19.) At that point, Plaintiff asserts she was "forced" to submit another TB test. (*Id*.)

Between July 2016 and July 2017, Plaintiff endured harassment and bullying from staff members regarding her age, work product, and race "on a continuing basis." (Doc. 42 at ¶ 20.) In addition, Plaintiff asserts she was again given work assignments "not within [her] purview." (*Id*. at ¶ 21.) In August 2017, Plaintiff reported the "ongoing harassment" to CDCR, which resulted in further harassment and retaliation. (*Id*. at ¶¶ 22-23.) Two days later, Plaintiff received another negative performance review from Bese, which was also rescinded upon Plaintiff's objection. (*Id*. at ¶ 24.) After suffering another year of harassment, Plaintiff was terminated in November 2018. (*Id*. at ¶ 25.) Plaintiff alleges CDCR failed to protect her rights as well as other minority and elderly employees, and instead protected the "harassers." (*Id*.)

Based upon these allegations, Plaintiff filed charges of discrimination against CDCR with the Equal Employment Opportunity Commission and received a right-to-sue letter in April 2019. (Doc. 42 at ¶ 11.) Plaintiff sued on December 23, 2019. (Doc. 1.) After amending her complaint twice, Plaintiff now brings claims against all Defendants, seeking damages for (1) violation of her civil rights under 42 U.S.C. § 1983; (2) discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964; (3) racial discrimination and retaliation in violation of 42 U.S.C. § 1981; and (4) age discrimination in violation of the Age Discrimination in Employment Act of 1967. (Doc. 42 at ¶¶ 26-65.) She also seeks damages from CDCR and Allison for (1) employment discrimination in violation of California's Fair Employment and Housing Act; (2) failure to prevent discrimination, harassment, and retaliation in violation of FEHA; (3) wrongful termination in violation of public policy; and (4) breach of the covenant of good faith and fair dealing. (*Id*. at ¶¶ 66-89.)

Defendants filed the instant motion to dismiss on February 28, 2022. (Doc. 56.) After a stipulated extension, Plaintiff filed an opposition on May 13, 2022 (Doc. 65), to which Defendants replied on May 23, 2022. (Doc. 66.) The Court subsequently issued an order to show cause why certain claims should not be dismissed for lack of jurisdiction. (Doc. 71.) Plaintiff failed to respond. Accordingly, the Court issued an order dismissing Plaintiff's § 1983 claim, § 1981 claim, and ADEA claim without prejudice. (Doc. 72.)[2] Remaining before the Court are Plaintiff's Title VII, FEHA, and state law claims.

### II.    Motion to Dismiss under 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. Porterville of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

---

[2] As to these dismissed claims, Defendants' motion to dismiss (Doc. 56) is **DENIED** as moot.

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III. Discussion and Analysis

#### A. Claims Two and Three – Title VII Discrimination and Retaliation

Plaintiff asserts two causes of action against Defendants under Title VII: disparate impact discrimination and retaliation for engaging in a protected activity. (Doc. 42 at ¶¶ 37-48.)

##### 1. Allison and Bese

In addition to CDCR, Plaintiff asserts claims against Allison, in her official capacity as CDCR Secretary, and Bese, in her official capacity as Chief of Mental Health at the Central California Women's Facility. (Doc. 42 at ¶¶ 5-7.)

"[C]laims against ... individuals in their official capacity merge into claims against the employer." *Taylor v. ScottPolar Corp.*, 995 F. Supp. 1072, 1079 (D. Ariz. 1998) (citing *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993)); *see also Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) ("Official-Capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an

agent.") (internal quotation marks omitted). Because claims against an individual in his or her official capacity are "redundant" and "unnecessarily duplicative" of claims against the employer, courts have determined it is appropriate for dismissal or summary adjudication of the claims. *See, e.g., Ctr. For Bioethical Reform, Inc. v. Los Angeles County Sheriff Dept.,* 533 F.3d 780, 799 (9th Cir. 2007) (affirming the court's dismissal of claims against an officer in where he was named in his official capacity and the entity was also a defendant); *Mock v. Cal. Dep't of Corr. & Rehab.*, 2015 WL 5604394 (E.D. Cal. Sept. 23, 2015) (where the plaintiff raised claims against both the Secretary of CDCR and the CDCR, the court found the individual defendant—named in his official capacity—was "an 'improper target'" and dismissed the claims *sua sponte*); *Taylor*, 995 F.Supp. at 1079 (granting summary judgment in favor of the individual defendant where the claims were also made against the entity employer).

As in *Mock* and *Taylor*, Plaintiff brings claims against Allison in her official capacity, Bese in her official capacity, and the entity employer, CDCR. Because Plaintiff's claims against Allison and Bese duplicate the claims against CDCR, dismissal of Plaintiff's Title VII claims against Allison and Bese is appropriate. *See Taylor*, 995 F.Supp. at 1079. Thus, remaining for the Court's consideration under Title VII are those against CDCR.

        2.       CDCR

              a.       Eleventh Amendment

Generally, the Eleventh Amendment bars suits against a state[3] unless the state waives its sovereign immunity or Congress abrogates that immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99 (1984); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456-57 (1976); *Sharnese v. California*, 547 F. App'x 820, 822 (9th Cir. 2013). Congress abrogated a state's Eleventh Amendment immunity when the state is sued as an "employer" pursuant to a Title VII claim. *Fitzpatrick*, 427 U.S. at 455-57; *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 279

---

[3] As the Court advised Plaintiff in its first screening order, "[t]he Eleventh Amendment bars suits against state agencies, as well as those where the state itself is named as a defendant, regardless of the relief sought." CDCR is a state agency. *Johnson v. Dep't of Corr. & Rehab.*, 2022 WL 866609, at *2 (E.D. Cal. Mar. 23, 2022), *report and recommendation adopted*, 2022 WL 5054464 (E.D. Cal. Oct. 4, 2022). Plaintiff concedes this point. (*See* Doc. 42 at ¶ 5.)

(1997) (clarifying *Fitzpatrick*'s holding that authorizing Title VII claims against the state "does not violate the Eleventh Amendment since Congress was exercising its § 5 remedial powers"); *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 975-76 (9th Cir. 1994); *Sosa v. Hiraoka*, 920 F.2d 1451, 1461 (9th Cir. 1990) ("Indeed, in 1972 Congress amended Title VII specifically to subject states and their subdivisions to Title VII actions…."). Thus, as an initial matter, Plaintiff's Title VII claims are not barred by the Eleventh Amendment.

        b.   Disparate impact discrimination

Defendants argue that in asserting her disparate impact claim, Plaintiff "fails to identify any employment practice that is discriminatory and fails to allege how any alleged policy or practice has a disparate impact on members of a protected class." (Doc. 56-1 at 5; Doc. 66 at 3.)

Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff alleging discrimination under Title VII may proceed under two theories: disparate treatment or disparate impact. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986-87 (1988).

"Disparate impact occurs 'when employment practices that are facially neutral in their treatment of different groups fall more harshly on one group than another.'" *Freeman v. Cnty. of Sacramento Dep't of Hum. Assistance*, 2020 WL 2539268, at *3 (E.D. Cal. May 19, 2020) (quoting *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 n. 1 (9th Cir. 2012)). To establish a prima facie case of disparate impact under Title VII, a plaintiff must demonstrate that an employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(k)(1)(A)(i); *Ricci*, 557 U.S. at 578; *see also Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 481 (9th Cir. 1983) (a plaintiff must establish that "a facially neutral employment practice has a 'significantly discriminatory' impact upon a group protected by Title VII") (quoting *Connecticut v. Teal*, 457 U.S. 440 (1982)); *Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 537 (9th Cir. 1982) ("[W]here a business practice, neutral on its face, is shown to have a substantial, adverse impact on some group protected by Title VII, the plaintiff has made out

a prima facie case….").

Although a prima facie case need not be established at the pleading stage, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), a complaint must plead a plausible claim sufficient to put the defendant on notice of the claim and the grounds it rests upon. *Id*. at 512; *see also Iqbal,* 556 U.S. at 678 (a complaint must contain sufficient factual matter to state a plausible claim for relief); *Lee v. Hertz Corp.*, 330 F.R.D. 557, 561 (N.D. Cal. 2019) ("Plaintiffs need not prove the prima facie elements to survive a motion to dismiss, but must plead the general elements to make a claim facially plausible.").

In the SAC, Plaintiff asserts that "[t]he discriminatory hiring and promoting practices of Defendant regarding management personnel has resulted in a marginally small number of African-American females, and elderly people holding such positions. Plaintiff has been directly affected and is among the class of persons adversely affected by Defendant's illegal conduct." (Doc. 42 at ¶ 40.) This is insufficient to state a plausible claim for a few reasons.

First, Plaintiff does not identify the specific practice or policy she is challenging. In her opposition, she argues that the discriminatory "policies" include the unwarranted TB tests and retaliatory performance reviews. (Doc. 65 at 5.) However, Plaintiff does not allege that, in general, TB testing and performance reviews have a disparate impact. Her allegations indicate a challenge to *unwarranted* TB tests and *retaliatory* performance reviews. (*See, e.g*., Doc. 42 at ¶¶ 17-19, 24.) These are not facially neutral policies. *See Thomas v. San Francisco Hous. Auth.*, 2017 WL 878064, at *5 (N.D. Cal. Mar. 6, 2017) (reasoning that although the policy of issuing rental statements was a neutral practice, plaintiff's allegations concerned "erroneous" rental statements, thereby failing to allege that the defendant applied a facially neutral policy that resulted in a disparate impact).

Second, in her disparate impact claim, Plaintiff references her race once and her gender twice.[4] In doing so, she fails to allege facts supporting a causal connection between the policy and her race or gender. (*See* Doc. 42 at ¶¶ 13, 40.) A court within this district was faced with a similar situation. *See Freeman*, 2020 WL 2539268, at *4 (finding no plausible claim where "[a]lthough plaintiff alleges that

---

[4] To the extent Plaintiff also asserts a disparate impact based on age, this Court has already informed Plaintiff that age is not a protected class under Title VII. (*See* Doc. 11 at 8.)

7

defendant's actions and practices have an unlawful disparate impact on African American employees, he neither identifies the specific employment practice that he is challenging, nor shows a causal relationship between the facially neutral practice and the significant disparate impact on African American employees") (internal citations and quotations omitted).

Lastly, and perhaps most importantly, Plaintiff does not allege how Defendants' practices affected *anyone*—regardless of race or sex—besides her. The complaint focuses its attention on Plaintiff as the only target. In fact, Plaintiff contends that she was "singled out" by the "policy" of subjecting Plaintiff "*and only* Plaintiff, to further TB testing and subsequent retaliatory reviews." (Doc. 65 at 5 [emphasis added].) Plaintiff also alleges in her SAC that with respect to the TB testing, "she was the only employee in a similar position as her that was required to resubmit her exam results before the annual reevaluation period had taken place." (Doc. 42 at ¶¶ 17, 19.) Not only do these assertions contradict Plaintiff's conclusory statement that Defendants' practices affected "African-American females and elderly people," but they also run contrary to a disparate impact claim.

As the Supreme Court explained, "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci*, 557 U.S. at 577. Plaintiff does not provide any factual allegations to sufficiently plead an adverse effect on a protected class. The entirety of Plaintiff's allegations consists of acts directed solely at her. Moreover, Plaintiff alleges that Defendants' actions were performed with "malice and oppression and in reckless disregard of Plaintiff's rights." (Doc. 42 at ¶ 42.) This also contradicts a facially neutral policy, or one not intended to discriminate. Thus, Plaintiff fails to state a plausible disparate impact claim.

      c.  *Retaliation*

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this [title] . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this [title] . . ." 42 U.S.C. § 2000e-3(a). Thus, an "employer can violate the anti-retaliation provisions of Title VII in either of two ways: (1) if the adverse employment action

occurs because of the employee's opposition to conduct made unlawful [by Title VII]; or (2) if it is in retaliation for the employee's participation in the machinery set up by Title VII to enforce its provisions." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).

To state a claim for retaliation in violation of Title VII, a plaintiff must show: (1) he engaged in protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Bleeker v. Vilsack*, 468 Fed.Appx. 731, 732 (9th Cir. 2012); *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). As discussed above, a complaint need not establish a prima facie case, but still must, at minimum, allege the elements and sufficient facts to put the defendant on notice. *Swierkiewicz*, 534 U.S. at 512; *Lee*, 330 F.R.D. at 561.[5]

### i. Protected activity

For an employee's "opposition" to be protected, the conduct that the employee opposed "must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation." *Learned v. Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). Conduct constituting a "protected activity" under Title VII includes filing a charge or complaint, testifying about an employer's alleged unlawful practices, and "engaging in other activity intended to oppose an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003) (citing 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted).

Defendants do not dispute that Plaintiff engaged in a protected activity by reporting what she believed to be discrimination and retaliation. Informal complaints are considered a protected activity under Title VII. *Ray*, 217 F.3d at 1240 n. 3. Accordingly, this element is sufficiently pled.

### ii. Adverse employment action

"[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit has determined "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray*, 217 F.3d

---

[5] In briefing this motion, neither party discusses the elements of a claim for Title VII retaliation. Rather, Defendants argue that Plaintiff did not provide factual allegations of the retaliation she believes she suffered. (Doc. 56 at 5.) The Court disagrees, as it can draw a reasonable inference that nearly all the adverse treatment Plaintiff alleges was potentially retaliatory.

at 1240. For example, adverse employment actions may include a transfer of job duties, undeserved performance ratings, and the dissemination of unfavorable job references. *Id.* at 1241 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *St. John v. Employment Development Dept.*, 642 F.2d 273, 274 (9th Cir. 1981); *Hashimoto*, 118 F.3d at 676).

According to Plaintiff, after she reported the incident involving a noose being placed on her desk, she was subjected to periodic aggression and harassment. (Doc. 42 at ¶ 14.) Just one week later, Plaintiff was given additional work assignments. (*Id.* at ¶ 15.) The following month, Plaintiff was transferred to the Ad. Seg. unit, which she contends houses "the most dangerous inmates." (*Id.* at ¶ 16.) Her requests to be relocated were ignored. (*Id.*) A few weeks later, Plaintiff contends she was "the only employee in a similar position as her" who was informed of the requirement to submit to testing for TB. (*Id.* at ¶ 17.) Within the following months, Plaintiff received a negative employment evaluation and termination warning for failing to comply with the testing requirement. (*Id.* at ¶ 19.) Plaintiff was harassed by colleagues from and given work assignments "not within [her] purview." (*Id.* at ¶¶ 20-21.) In August 2017, Plaintiff reported the events to CDCR, and was "again…subjected to further harassment in retaliation for here [sic] opposition and her complaints." (*Id.* at ¶¶ 22-23.) "Coincidentally," that same month, Plaintiff received another negative performance review. (*Id.* at ¶ 24.) All or nearly all of these acts are adverse employment actions. Defendants do not meaningfully dispute that Plaintiff suffered an adverse employment action. This element is sufficiently pled.

*iii.* *Causal link*

The requisite causal link between protected activity and an adverse employment action may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1375. Notably, "causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Because the Court is obligated to construe allegations in the light most favorable to Plaintiff, given the short period of time between protected activities and adverse employment actions, as set forth above, a causal link may be inferred. *See, e.g., Yartzoff*, 809 F.2d at 1376 (inferring causation

where adverse employment actions took place less than three months after the plaintiff's complaint where his supervisors were aware of his Title VII charges and his participation in administrative investigations); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869-70 (9th Cir. 1996) (finding causal link where alleged retaliation followed within months of protected activity where supervisor knew of the employee's complaint). Accordingly, the Court finds that Plaintiff has sufficiently pled a claim for retaliation in violation of Title VII against CDCR.

### B. Claims Six and Seven -- FEHA Discrimination and Failure to Prevent

Plaintiff asserts two causes of action under FEHA against CDCR and Allison. (Doc. 42 at ¶¶ 66-77.) As discussed previously, the Eleventh Amendment bars such claims against CDCR, as a state agency, and Allison, in her official capacity as an officer of the state. *Pennhurst*, 465 U.S. at 98-99; *Fitzpatrick*, 427 U.S. at 456-57; *Mack v. California Dep't of Corr. & Rehab.*, 790 F. App'x 846, 848 (9th Cir. 2019); *Sharnese*, 547 F. App'x at 822. Unlike Title VII claims, "California has not waived its immunity to FEHA actions in federal court." *Mack*, 790 F. App'x at 848. Thus, the Court lacks jurisdiction over Plaintiff's FEHA claims. These claims are dismissed.

### C. Claim Eight – Wrongful Termination in Violation of Public Policy

The authority of an employer to terminate at-will employees is broad but "can be limited by statute or considerations of public policy." *Ortiz v. Lopez*, 688 F.Supp. 1072, 1078-79 (E.D. Cal. 2010) (citing *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167 (1980)). "When an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action against the employer." *Id*.

Plaintiff asserts a claim for wrongful termination in violation of public policy based on 29 U.S.C. section 2601(b)(1) and (2); and California Government Code sections 12940(a), (j), (h), 12945, and 12945.2. (Doc. 42 at ¶ 82.) None of these statutory provisions provide a basis to state a cognizable claim.

First, California Government Code sections 12940 (a), (j), (h), 12945, and 12945.2 are encompassed by FEHA. Cal. Gov't Code §§ 12900-12996. As Defendants contend, and the Court has already determined, Plaintiff's FEHA claims are barred by the Eleventh Amendment. Thus, to the extent Plaintiff relies on alleged FEHA violations to state her wrongful termination claim, this claim

fails as a matter of law. *See Rangel v. Am. Med. Response W.*, 2013 WL 1785907, at *25 (E.D. Cal. Apr. 25, 2013) (finding that because "summary adjudication of the retaliation claim" was denied, "summary adjudication must also be denied as to the cause of action for wrongful termination"); *see also Schulthies v. AMTRAK*, 650 F.Supp.2d 994, 1003 (N.D. Cal. 2009) (dismissing plaintiff's claim for wrongful termination in violation of public policy based upon a violation of the California Labor Code where the plaintiff failed to allege facts sufficient to support a claim under the same Labor Code statute).

The remaining statutory provisions, 29 U.S.C. sections 2601(b)(1) and (2), are part of the Family Medical Leave Act of 1993. 29 U.S.C. § 2601 *et seq*. Nothing in Plaintiff's complaint implicates the FMLA, nor does Plaintiff offer any argument or explanation to assist the Court in making this connection.[6] Without providing any factual support for reliance on statutory provisions that appear to be unrelated to this matter, the claim is insufficiently pled to the extent Plaintiff's wrongful termination claim is predicated on 29 U.S.C. section 2601.

Finally, although the parties do not address this issue, the Court explained in its second screening order, *inter alia*, that "[t]ort liability of public entities in California is governed by the Tort Claims Act, California Government Code §§ 810, *et seq*. The Act provides that public entities are not liable for injuries 'except as otherwise provided by statute.' Cal. Gov't Code § 815(a)." (Doc. 11 at 10.) As such, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care ... Otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles." *Thomsen v. Sacramento Metro. Fire Dist.*, 2009 WL 8741960, at *14 (E.D. Cal. Oct. 20, 2009) (internal quotation marks omitted). Because a claim brought under *Tameny* is a "common law, judicially created tort," section 815 "bars *Tameny* actions against public entities" such as CDCR. *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 899-900 (2008); *see also Fox v. Carter*,

---

[6] California Government Code sections 12945 and 12945.2 also concern unlawful employment practices related to pregnancy leave, family care, and medical leave. *See* Cal. Gov't Code §§ 12945, 12945.2. Similarly, Plaintiff does not allege or otherwise explain how these sections are applicable to her wrongful termination claim. Thus, in addition to failing to state a claim for reliance on FEHA, Plaintiff has not sufficiently pled her claim based upon Government Code sections 12945 and 12945.2.

2016 WL 4494434, at *2 (E.D. Cal. Aug. 25, 2016) (holding that *Tameny* claims "against a federal agency are barred pursuant to California Government Code section 815, which grants immunity to public entities unless otherwise provided for by statute, because there is no express statutory authority allowing for public entity liability"); *Haack v. California Dep't of Corr. and Rehab.*, 2012 WL 570353, *4-5 (E.D. Cal. Feb. 21, 2012) (dismissing *Tameny* claim against CDCR pursuant to section 815); *Moore v. California Dep't of Corr. & Rehab.*, 2011 WL 2433355, at *9 (E.D. Cal. June 13, 2011) (same); *Debro v. Contra Costa Cmty. Coll. Dist.*, 2021 WL 5585592, at *5 (N.D. Cal. Nov. 30, 2021) (dismissing *Tameny* claim against public entity pursuant to section 815).

Because Plaintiff has not alleged a statutory provision upon which her wrongful termination claim can rely, she has failed to state a cognizable claim for wrongful termination in violation of public policy. Accordingly, this claim is dismissed.

**D.   Claim Nine – Breach of Implied Covenant of Good Faith and Fair Dealing**

In her ninth and final cause of action, Plaintiff alleges CDCR breached the implied covenant of good faith and fair dealing "by denying Plaintiff a work environment free from discrimination . . . failing to provide her with a performance plan for improvement . . . denying Plaintiff fair treatment, and terminating her." (Doc. 42 at ¶ 86.) Defendants seek dismissal of this claim because Plaintiff failed to sufficiently allege a valid contract and the claim is barred by the Eleventh Amendment. (Doc. 56-1 at 7-8.) Plaintiff's claim fails irrespective of CDCR's sovereign and public entity immunity. *See, e.g.*, *Fresquez v. Cnty. of Stanislaus*, 2014 WL 1922560, at *11 (E.D. Cal. May 14, 2014) (dismissing implied covenant claim based upon section 815 or "public entity" immunity); *Faz v. N. Kern State Prison*, 2011 WL 4565918, at *1, 5 (E.D. Cal. Sept. 29, 2011) (barring implied covenant claim based on Eleventh Amendment immunity).

In California, a claim for breach of the implied covenant of good faith and fair dealing "depends upon the existence of a valid contract." *Mock v. California Dep't of Corr. & Rehab.*, 2015 WL 5604394, at *17 (E.D. Cal. Sept. 23, 2015) (quoting *Stanley v. Univ. of Southern California,* 176 F.3d 1069, 1078 (9th Cir. 1999)); *see also Kim v. Regents of Univ. of California*, 80 Cal. App. 4th 160, 164 (2000) ("Since the good faith covenant is an implied term of a contract, the existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant."). As a result,

Plaintiff would be required to demonstrate the existence of a contract to claim a breach of the implied covenant.

Not only does Plaintiff fail to allege the existence of a contract or facts sufficient to allow the Court to infer its existence, Plaintiff is prevented, as a matter of law, from doing so.[7] Under California law, terms of public employment are held by statute, not by contract. *Miller v. State of California*, 18 Cal. 3d 808, 813 (1977). Moreover, the "statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith." *Id.* at 814. Thus, "as a matter of law, there can be no express or implied-in-fact contract between plaintiff and [CDCR] which restricts the manner or reasons for termination of his employment." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 905 (9th Cir. 1993); *see also Mock*, 2015 WL 5604394, at *17 ("No contractual right is vested in a public employee because he occupies a civil service position and because the terms and conditions of such employment are fixed by statute and not by contract."); *Petersen v. Cnty. of Stanislaus*, 2012 WL 4863800, at *7 (E.D. Cal. Oct. 12, 2012) ("A California public employee, whether civil service or not, cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing arising out of the public employment relationship.") (citing *Lachtman v. Regents of Univ. of California*, 158 Cal. App. 4th 187, 207 (2007)).

Because Plaintiff fails to allege a valid contract, and because her employment terms as a public employee are governed by statute that cannot be circumvented by contract, Plaintiff cannot state a claim for breach of the implied covenant of good faith and fair dealing. *Mock*, 2015 WL 5604394; *Petersen*, 2012 WL 4863800. Accordingly, this claim is dismissed.

**IV.     Leave to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations, internal quotation marks omitted). Leave to amend generally shall be

---

[7] To the extent Plaintiff attempts to state a claim for tortious breach of the implied covenant, the claim also fails. *See Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990) ("Nor can plaintiff state a cause of action for *tortious* breach of the implied covenant of good faith, since that cause of action, in the employment context, cannot support an award of tort damages.") (emphasis in original).

denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008). Plaintiff seeks leave to amend. (Doc. 65 at 7-8.) However, it appears any leave to amend would be futile as many of the defective claims cannot be cured by amendment, such as those regarding sovereign immunity. *See Sharnese*, 547 F. App'x at 823-24 (leave to amend was futile because amendment did not cure "fatal defects" regarding sovereign immunity). In addition to the deficiencies noted in this order, Plaintiff has already—unsuccessfully—amended her complaint twice, despite being provided the applicable legal standards on more than one occasion. *James v. UC Davis Police Dep't*, 2012 WL 1593210, at *2–3 (E.D. Cal. May 4, 2012). Furthermore, the Court's second screening order gave Plaintiff **one final opportunity** to amend her complaint. (Doc. 11 at 2-13 [emphasis in original].) The Court has also highlighted the delays caused by Plaintiff throughout the course of this matter. (Doc. 72.) Therefore, to allow further amendment would not only be futile, but it would also cause undue delay and undue prejudice to Defendants. Accordingly, leave to amend will be denied.

**V.      Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1. Defendants' motion to dismiss (Doc. 56) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The motion is **DENIED** as moot as to Plaintiff's previously dismissed claims under 42 U.S.C. § 1983, 42 U.S.C. § 1981; and ADEA (claims one, four, and five). (Doc. 72.)

   b. The motion **GRANTED** as to Plaintiff's second claim for disparate impact under Title VII.

   c. The motion is **DENIED** as to Plaintiff's third claim for retaliation under Title VII brought against CDCR **only** and **GRANTED** as to Plaintiff's retaliation claims brought against Allison and Bese **only**.

   d. The motion is **GRANTED** as to Plaintiff's remaining claims for discrimination under FEHA; failure to prevent discrimination under FEHA; wrongful

15

termination in violation of public policy; and breach of the implied covenant of good faith and fair dealing (claims six through nine).

IT IS SO ORDERED.

Dated:  **December 12, 2022**                                  /s/ Jennifer L. Thurston
                                                               UNITED STATES DISTRICT JUDGE